**Case No. 22-5181**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## UNITED STATES OF AMERICA
Plaintiff-Appellee

vs.

## DAVID PENNINGTON
Defendant-Appellant

*On Appeal from the United States District Court
for the Eastern District of Kentucky*

## BRIEF OF APPELLANT DAVID PENNINGTON

STEPHEN ROSS JOHNSON
CATALINA L. C. GOODWIN
*RITCHIE, DAVIES, JOHNSON & STOVALL, P.C.*
606 W. Main St., Suite 300
Knoxville, Tennessee 37902
(865) 637-0661
johnson@rdjs.law
goodwin@rdjs.law

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................................i

TABLE OF AUTHORITIES ................................................................................iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT .........................................1

STATEMENT OF JURISDICTION.....................................................................2

STATEMENT OF THE ISSUES..........................................................................3

STATEMENT OF THE CASE .............................................................................5

I.    Procedural History. ................................................................................5

II.   Statement of Facts..................................................................................8

    A.    Mr. Pennington's advisory sentencing range was largely predicated on a base offense level for substantive human trafficking offenses. .........9

    B.    Mr. Pennington's personal history and characteristics played a significant role in the court's downward variance. ..............................11

    C.    The court imposed a term of supervised release in the middle of the range. ............................................................................................12

SUMMARY OF THE ARGUMENT ...................................................................13

ARGUMENT ......................................................................................................14

I.    Mr. Pennington's sentence for witness tampering was improperly based on a heightened guideline applicable to human trafficking convictions...............14

    A.    Standard of Review. .........................................................................14

    B.    The applicable standard of review for the issues in this appeal should be abuse-of-discretion, though Mr. Pennington is also entitled to relief for plain error.................................................................................22

    C.    The base offense level was miscalculated because it incorrectly included that the offense of conviction was for human trafficking. ...27

D. The elevated offense level 34 in §2G1.1(a)(1) was specially promulgated for convictions under § 1591(b)(1) to effectuate a mandatory minimum sentence. ..........................................34

E. Because the offense underlying Mr. Pennington's witness tampering conviction is conspiracy to commit human trafficking, the base offense level is 14..................................................................................35

F. Mr. Pennington's sentence should be vacated and remanded for resentencing based on a corrected calculation of the guidelines. .......39

II. Mr. Pennington's term of supervised release is unreasonably long..............41

CONCLUSION.............................................................................................48

CERTIFICATE OF COMPLIANCE.....................................................................46

CERTIFICATE OF SERVICE ............................................................................47

ADDENDUM .................................................................................................48

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Chapman v. California*, 386 U.S. 18 (1967)..................................................................14

*Gall v. United States*, 552 U.S. 38 (2007) ..................................................................14

*Holguin-Hernandez v. United States*, 206 L. Ed. 2d 95, 140 S. Ct. 762 (2020) .........
................................................................... 3, 4, 15, 16, 18, 24, 25, 26

*Johnson v. United States*, 529 U.S. 694 (2000) ..........................................................42

*Johnson v. Zerbst*, 304 U.S. 458 (1938) ....................................................................21

*Molina-Martinez v. United States*, 578 U.S. 189 (2016)...................................19, 25

*Mont v. United States*, 204 L. Ed. 2d 94, 139 S. Ct. 1826 (2019) ...........................42

*Rosales-Mireles v. United States*, 201 L. Ed. 2d 376, 138 S. Ct. 1897 (2018) .......25

*Thomas v. United States*, No. 3:14-cr-00214-MO, 2018 WL 1778593, 2018 U.S. Dist. LEXIS 62654 (D. Or. Apr. 12, 2018) ........................................................31, 32

*United States v. Adams*, 873 F.3d 512 (6th Cir. 2017) ..............................................15

*United States v. Albaadani*, 863 F.3d 496 (6th Cir. 2017) ..........................................2

*United States v. Bailey*, 973 F.3d 548 (6th Cir. 2020)...............................................33

*United States v. Bailey*, 264 Fed. App'x 480 (6th Cir. 2008)...................................44

*United States v. Barajas-Nunez*, 91 F.3d 826 (6th Cir. 1996).................................19

*United States v. Bolds*, 511 F.3d 568 (6th Cir. 2007)...........................................15, 41

*United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004)......................................4, 19, 20

*United States v. Brown*, 856 Fed. App'x 36 (6th Cir. 2021) ....................................14

*United States v. Caldwell*, Crim. No. 2:17cr002, Civ. No. 2:18cr198, 2021 WL 5579760, 2021 U.S. Dist. LEXIS 229663 (E.D. Va. Nov. 30, 2021).....................38

*United States v. Carter*, 960 F.3d 1007 (8th Cir. 2020) ...........................................38

*United States v. Collins*, 860 F. App'x 405 (6th Cir. 2021) ....................................18

*United States v. Corrales*, No. 21-6046, 2022 WL 7386925, 2022 U.S. App. LEXIS 28587 (6th Cir. Oct. 13, 2022).........................................................21, 22, 23, 24

*United States v. Davis*, 751 F.3d 769 (6th Cir. 2014)..............................................16

*United States v. Donadeo*, 910 F.3d 886 (6th Cir. 2018) ........................................33

*United States v. Fleischer*, 971 F.3d 559 (6th Cir. 2020).........................................14

*United States v. Gillis*, 592 F.3d 696 (6th Cir. 2009) ..............................................16

*United States v. Greer*, 872 F.3d 790 (6th Cir. 2017) ........................................31, 32

*United States v. Hatcher*, 947 F.3d 383 (6th Cir. 2020).........................................19

*United States v. Hernandez-Fierros*, 453 F.3d 309 (6th Cir. 2006) ........................30

*United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012)..........................................41

*United States v. Jackson*, No. 2:16-cr-00054-DCN, 2018 WL 1316933, 2018 U.S. Dist. LEXIS 41571 (D.S.C. Mar. 14, 2018) ........................................................37

*United States v. Jessie*, 656 Fed. App'x 97 (6th Cir. 2016) ....................................41

*United States v. Johnson*, 26 F.4th 726 (6th Cir. 2022)............................14, 15, 16

*United States v. Ketter*, 908 F.3d 61 (4th Cir. 2018) ...............................................2

*United States v. Kimble*, 305 F.3d 480 (6th Cir. 2002) ..........................................29

*United States v. Lewis*, 498 F.3d 393 (6th Cir. 2007)..............................................42

*United States v. Lin*, 841 F.3d 823 (9th Cir. 2016).....................................34, 36, 37

*United States v. Lopez*, 813 Fed. App'x 200 (6th Cir. 2020) ..................................23

*United States v. Milliron*, 984 F.3d 1188 (6th Cir. 2021).......................................26

*United States v. Ming Liou*, 491 F.3d 334 (6th Cir. 2007) .....................................24

*United States v. Montgomery*, 998 F.3d 693 (6th Cir. 2021)......................20, 22, 25

*United States v. Mosley*, 550 Fed. App'x 277 (6th Cir. 2014) ................................41

*United States v. Nicolescu*, 17 F.4th 706 (6th Cir. 2021) ............................................25

*United States v. Olano*, 507 U.S. 725 (1993) ....................................................19, 21

*United States v. Perez-Rodriguez*, 960 F.3d 748 (6th Cir. 2020) ......................15, 16

*United States v. Prater*, 766 F.3d 501 (6th Cir. 2014).............................................23

*United States v. Rayyan*, 885 F.3d 436 (6th Cir. 2018)............................................16

*United States v. Salem*, 657 F.3d 560 (7th Cir. 2011) .............................................33

*United States v. Sears*, 32 F.4th 569 (6th Cir. 2022) ..............................................14

*United States v. Sherrill*, 972 F.3d 752 (6th Cir. 2020)...........................................21

*United States v. Simmons*, 587 F.3d 348 (6th Cir. 2009)..........................................20

*United States v. Sims*, 957 F.3d 362 (3d Cir. 2020)..................................................38

*United States v. Small*, 988 F.3d 241 (6th Cir. 2021)...............................................15

*United States v. Story*, 503 F.3d 436 (6th Cir. 2007)...............................................40

*United States v. Valdez*, No. 19-12522, __ Fed. App'x __, 2021 WL 3478402, 2021 U.S. App. LEXIS 23498 (11th Cir. Aug. 9, 2021) ................................................38

*United States v. Vanier*, No. S1 18-CR-873 (VSB), 2021 WL 5989773, 2021 U.S. Dist. LEXIS 241461 (S.D.N.Y. Dec. 17, 2021) ......................................................38

*United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008) (en banc) ............................. ............................................................................ 4, 16, 18, 19, 20, 24, 26, 27

*United States v. Welch*, 689 F.3d 529 (6th Cir. 2012) .............................................39

*United States v. West*, 962 F.3d 183 (6th Cir. 2020) ...............................................16

*United States v. Wheeler*, 851 Fed. App'x 592 (6th Cir. 2021)...............................19

*United States v. Wilson*, No. 20-1984, 2021 WL 3017276, 2021 U.S. App. LEXIS 21136 (6th Cir. July 16, 2021) ...................................................................15, 17

*United States v. Wright*, 841 Fed. App'x 940 (6th Cir. 2021)..................................18

*United States v. Young*, No. 3:14-cr-05242-RJB, 2017 U.S. Dist. LEXIS 31461 (W.D. Wa. Mar. 6, 2017) ................................................................................37

*United States v. Zabel*, 35 F.4th 493 (6th Cir. 2022).........................................14, 42

*Williams v. United States*, No. 19-CV-1375-JPS, 2022 2916349, 2022 WL 2916349, 2022 U.S. Dist. LEXIS 131235 (E.D. Wis. July 25, 2022) ....................................37

## Constitutional Provisions

U.S. Const. amend. V ..............................................................................14

U.S. Const. amend. VI ............................................................................14

U.S. Const. amend. VIII..........................................................................14

## Statutes

18 U.S.C. § 1291 .......................................................................................2

18 U.S.C. § 1591 ........................................ 3, 4, 27, 29, 30, 33, 34, 35, 36, 37, 38, 39

18 U.S.C. § 1594 ....................................................................27, 28, 36, 38, 39

18 U.S.C. § 3553 ................................................ 12, 13, 14, 15, 16, 21, 41, 42, 44

18 U.S.C. § 3583 ...............................................................................41, 43

18 U.S.C. § 3742 ...............................................................................2, 40, 45

## Other Authorities

6th Cir. R. 34...........................................................................................1

Fed. R. App. P. Rule 3 ..............................................................................2

Fed. R. App. P. Rule 4 ..............................................................................2

Fed. R. App. P. Rule 25 ............................................................................47

Fed. R. App. P. Rule 32 ..........................................................................24, 46

Fed. R. Crim. P. Rule 51 ...................................................................13, 26

Fed. R. Crim. P. Rule 52 ...........................................................................19

USSG amend. 701 ......................................................................................35

USSG §1B1.2 .............................................................................................28

USSG §1B1.3 ...............................................................................28, 30, 32

USSG §2A3.1 .............................................................................................32

USSG §2G1.1 ................................. 3, 10, 29, 30, 31, 34, 35, 36, 37, 39

USSG §2J1.2 ...............................................................3, 28, 29, 31, 32

USSG §2X1.1 .............................................................................................29

USSG §2X3.1 ...................................................................11, 29, 31, 32

USSG §3E1.1 .............................................................................................40

USSG §5D1.2 .............................................................................................41

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Logan Towery fronted drugs to women with the expectation they would pay him back after performing sex acts with customers for money. Defendant-Appellant David Pennington was a customer, so the government indicted him for conspiring with Mr. Towery and others to commit coercive human trafficking. Pretrial, Mr. Pennington contacted some of the victims; when he later pleaded guilty to witness tampering, his conspiracy charge was dismissed. At sentencing, the district court varied downward, recognizing Mr. Pennington's romantic relationships with some of the women and his diagnosis with a mental disorder that caused him to perceive his "relationships" with the victims as uncoerced. However, the court began with a significantly higher base offense level than is typical for witness tampering because it applied a sentencing guideline meant for human trafficking convictions.

This appeal raises important factual and legal issues regarding the proper sentencing guideline applicable to a conviction for witness tampering during a human trafficking conspiracy prosecution, which appears to be an issue of first impression. There is also a circuit split over whether the heightened offense level for human trafficking applies to human trafficking *conspiracy* cases.

Mr. Pennington therefore respectfully requests oral argument, which he believes would assist the Court with its resolution of these issues where the courts of appeal have not ruled or reached different conclusions. 6 Cir. R. 34(a).

# STATEMENT OF JURISDICTION

This is an appeal as of right in a criminal case by the defendant from a final judgment of the U.S. District Court for the Eastern District of Kentucky. Fed. R. App. P. Rules 3, 4(b). The district court had jurisdiction to hear allegations of violations of federal criminal statutes pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. *See also* 18 U.S.C. § 3742(a).

Mr. Pennington pleaded guilty pursuant to an agreement that reserved his right to appeal his sentence. (Plea Agreement, R. 491, Page ID # 2575). On February 22, 2022, the district court imposed judgment, filed February 28, 2022. (Judgment, R. 534, Page ID # 2736). On March 7, 2022, Mr. Pennington filed a notice of appeal. (Notice of Appeal, R. 537, Page ID # 2749).

This Court has jurisdiction even though Mr. Pennington was released from custody in September 2022, because he is serving a two-year term of supervised release, and the Sixth Circuit follows the majority rule treating custodial and supervised release sentences as "unitary." *See United States v. Albaadani*, 863 F.3d 496, 502–03 (6th Cir. 2017) (appeal not moot after custodial sentence if supervised release could be reduced); *United States v. Ketter*, 908 F.3d 61, 65–66 (4th Cir. 2018) (collecting cases); *see also id.* at 66 n.1 (noting Sixth Circuit unpublished opinion based on divisible-sentence theory contradicts Sixth Circuit law and was criticized in subsequent published Sixth Circuit opinion).

## STATEMENT OF THE ISSUES

The federal sentencing guideline for witness tampering convictions includes a cross-reference to calculate the base offense level using the "underlying offense." USSG §2J1.2. For underlying human trafficking offenses, courts must apply a base offense level of 34 "if the offense of conviction is 18 U.S.C. § 1591(b)(1) [human trafficking]," or 14 "otherwise." USSG §2G1.1. A defendant who wishes to preserve a challenge to a sentence calculation must object or inform the court of his preferred action. *Holguin-Hernandez v. United States*, 206 L. Ed. 2d 95, 140 S. Ct. 762, 764 (2020).

Mr. Pennington pleaded guilty to witness tampering in the case of *United States v. Towery et al.*, No. 6:19-CR-74. The plea agreement was silent regarding the appropriate guideline and did not identify an "underlying offense" for purposes of calculating his guideline sentence. The district court applied a base offense level 34 for human trafficking offenses. Mr. Pennington objected to facts suggesting he was guilty of human trafficking, but not the guideline calculation, and he brought his confusion regarding the human trafficking guideline to the court's attention when he sought a lower sentence. (Sentencing Transcript, R. 571, Page ID ## 2956, 2982). He was ultimately sentenced to 29 months in prison and 24 months supervised release. Therefore, the issues are:

I. Whether Mr. Pennington's guidelines range was incorrectly calculated using the heightened base offense level for defendants convicted of human trafficking, 18 U.S.C. § 1591, though he was neither charged with nor pleaded guilty to violating § 1591.

II. Whether Mr. Pennington's supervised release term is substantively unreasonable because it is too long.

III. Whether Mr. Pennington's judgment should be vacated, reversed, and remanded for resentencing.

IV. Whether the Supreme Court's holding in *Holguin-Hernandez v. United States*, 206 L. Ed. 95, 140 S. Ct. 762 (2020), that defendants need not use "particular language" to preserve substantive reasonableness claims for appeal should be extended to preservation of procedural reasonableness claims, overruling *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), and *United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008) (en banc).

**STATEMENT OF THE CASE**

## I.    Procedural History.

In October 2019, the government brought charges against three men for conspiring to engage in human trafficking, along with other drug trafficking and firearm offenses. (Indictment, R. 11, Page ID ## 45–50). When the indictment was superseded one month later, Mr. Pennington and others were added to the conspiracy count. (Superseding Indictment, R. 51, Page ID ## 207–213). Mr. Pennington was released pending trial. (Order Setting Conditions of Release, R. 97, Page ID # 334).

According to the government, Mr. Pennington's neighbor "prostitute[d] young women," and Mr. Pennington "paid several young women for sexual acts." (Rearraignment Transcript, R. 579, Page ID # 3051). *See also* (PSR, R. 539, Page ID # 2763).  Pretrial, Mr. Pennington conceded that he "engaged in a 'commercial sex act' with at least some of the victims" (*i.e.*, he accepted an "offer of sex in exchange for money"). *See* (Memorandum Opinion, R. 438, Page ID ## 2005–2006); (Order, R. 447, Page ID # 2039).

In August 2020, Mr. Pennington's pretrial release was revoked because he communicated extensively with two of the victims. (Detention Findings, R. 277, Page ID # 984). Mr. Pennington stipulated to the violation but contested revocation, asking for stricter release conditions rather than detention, but the court found the violations "egregious" and revoked his release. (*Id.*, Page ID # 986).

In pretrial filings, Mr. Pennington gave notice that he would be relying on expert evidence of a mental disorder to explain his conduct. *See* (Notice, R. 372, Page ID # 1658). Specifically, he planned to offer evidence of his dependent personality disorder, which caused him to "perceive[] his 'relationships' with the victims as 'meaningful,' romantic, and uncoerced." (Memorandum Opinion, R. 438, Page ID # 2006). Preliminarily, the court determined that this "diminished capacity evidence" would be admissible, reasoning that Mr. Pennington was charged with conspiracy, and it was therefore "possible" for his disorder to negate the offense's *mens rea*. (*Id.*, Page ID ## 1999, 2001, 2005).

In September 2021, the government superseded the indictment again, adding charges against Mr. Pennington for his conduct that caused his release revocation: witness tampering and committing a violation on release. (Fourth Superseding Indictment, R. 473, Page ID ## 2525–2529).

Thereafter, Mr. Pennington agreed to plead guilty to witness tampering, and the government agreed to dismiss all other counts. (Plea Agreement, R. 491, Page ID ## 2573–2576). He "reserve[d] the right to appeal the sentence." (*Id.*, Page ID # 2575).

In October 2021, the district court accepted Mr. Pennington's guilty plea. (Rearraignment Transcript, R. 579, Page ID # 3054). His attorney argued he should be released pending sentencing because his 13 months of pretrial detention had been

punitive. (*Id.*, Page ID ## 3057–3058). Mr. Pennington is in his 70s and suffers from diabetes; he was removed to a unit where he was effectively in solitary confinement because he had been harassed and threatened; and, reflecting his poor health and confinement conditions, he lost 45 pounds. (*Id.*). The government opposed release and suggested that the court would apply a level 34 guideline sentence (for human trafficking offenses), though that was "not spelled out in the plea agreement." (*Id.*, Page ID # 3065–3066). Mr. Pennington's counsel said the parties did not agree on that guideline. (*Id.*, Page ID # 3066).

In response to the Presentence Investigation Report (PSR), *see* (PSR, R. 539, Page ID ## 2759–2788), the defense lodged some factual objections. (*Id.*, Page ID ## 2783–2788).

In February 2022, Mr. Pennington was sentenced to 29 months in prison followed by two years of supervised release. (Judgment, R. 534, Page ID ## 2737–2738). At sentencing, the defense did not make any objections to the guideline range, which the court adopted from the PSR. (Sentencing Transcript, R. 571, Page ID # 2955). *See also* (*id.*, Page ID ## 2950–2951) ("[I]t wasn't my intention to object….If this is perceived as an objection, I would withdraw it as an objection."); (*id.*, Page ID # 2987) (noting Mr. Pennington's age, lack of criminal history, long work history, specific role, personality disorder, and "evidence that he had a romantic relationship

with these women"). The defense did not lodge any objections to the sentence as announced. (*Id.*, Page ID # 2990).

## II. Statement of Facts.

As part of the defense investigation, Mr. Pennington was evaluated for mental disorders and ultimately diagnosed with dependent personality disorder. (Sentencing Memorandum, R. 523, Page ID ## 2677–2678). During the diagnostic process, the psychiatrist learned about Mr. Pennington's history, including a pattern of being susceptible to manipulation. (*Id.*) Mr. Pennington's history and diagnosis were reflected in his offense conduct, as summarized in his sentencing memorandum:

> A short time after they first met Towery began to suggest that David meet young women known to Towery. Towery explained the girls were prostitutes and offered to send them to David's home. David accepted and soon a young woman came to his house and knocked on his door. Over time, 4 or 5 others came to his home. Only one of the 5 or 6 young women who came to David's home (V5) engaged in sexual activity more than once. David's interactions with V5 were predominantly platonic and most often involved him purchasing her clothing, household items and food from restaurants and grocery stores. These purchases were not made in exchange for sexual favors, but simply because David believed V5 or her young daughter needed the items. David believed he was in a romantic relationship with V5 and consistently encouraged her to stop abusing controlled substances. When David's granddaughter held a birthday party for her daughter, David invited V5 and her daughter to the party so that V5's daughter would have an opportunity to interact with children her own age. David treated V5 with kindness and respect – each said "I love you" to the other.

> The personality disorder which compelled David to seek the attention of the young women involved in this case was also present when David violated the conditions of his bond, which ultimately led

to the count of conviction in this matter. No woman has alleged and no evidence exists showing that David physically abused any of the victims identified in this case. In fact, the young women interviewed by law enforcement acknowledged that David treated them respectfully during their interactions with him….

(*Id.*, Page ID ## 2679–2680). *See also* (Sentencing Transcript, R. 571, Page ID # 2963–2964) (examples of conduct evidencing belief of relationship).

The magistrate judge described Mr. Pennington's witness tampering as "one of the most egregious bond violations the Court had seen." (PSR, R. 539, Page ID # 2751). However, when the district court heard the more complete context of Mr. Pennington's conduct and history, the court agreed that his conduct was "really egregious" but varied downward 45%. (Sentencing Transcript, R. 571, Page ID ## 2985, 2987). *See also* (PSR, R. 538, Page ID # 2751). In addition, because Mr. Pennington has significant health issues,[1] the court recommended he be designated to a federal medical facility. (Sentencing Transcript, R. 571, Page ID ## 2988, 2993) (recognizing BOP determination).

### A. Mr. Pennington's advisory sentencing range was largely predicated on a base offense level for substantive human trafficking offenses.

Mr. Pennington's plea agreement was silent on the applicable sentencing guideline to determine his offense level or range. (Plea Agreement, R. 491, Page ID ## 2574–2575). The probation office concluded his base offense level should be 28

---

[1] (PSR, R. 538, Page ID # 2751).

by reasoning that Mr. Pennington was convicted of witness tampering, and the applicable guideline for that offense includes a cross-reference to the "underlying offense" because the tampering obstructed "the investigation or prosecution of a criminal offense." *See* (PSR, R. 539, Page ID ## 2774–2775). The PSR then summarily stated that, "The underlying offense…is Conspiracy to Engage in Human Trafficking. The offense level for the underlying offense, Human Trafficking, is determined under §2G1.1 and results in an offense level of 34, per §2G1.1(a)(1)…." (*Id.*, Page ID # 2774)

Mr. Pennington filed objections and corrections to the PSR, emphasizing and maintaining that "he was not criminally involved with Towery's human trafficking organization" and denied "any criminal responsibility for human trafficking." (*Id.*, Page ID ## 2783, 2787–2788). His counsel "advised there are no objections to the presentence report that impact the guidelines calculation" while emphasizing that Mr. Pennington "was not criminally involved with Towery's human trafficking organizations." (*Id.*, Page ID # 2783). The probation office clarified that "[t]he presentence report does not hold Pennington responsible for being convicted of human trafficking" and issued no modifications. (*Id.*) Mr. Pennington communicated additional comments, "specifically his adamant denial of criminal liability" for the human trafficking count. (*Id.*, Page ID # 2785). The probation office

again stated that "The presentence report does not hold Pennington responsible for being convicted of human trafficking." (*Id.*)

At sentencing, the parties agreed there were no objections to the PSR that affected the guideline range but reiterated Mr. Pennington's factual objections. (Sentencing Transcript, R. 571, Page ID ## 2949–2951).

The court found Mr. Pennington's base offense level to be 28, "and that's under 2S3.1(a)(1),[2] which is the human trafficking offense less six points." (*Id.*, Page ID # 2954). The court did not further explain its decision to apply that base offense level. After the guideline range was announced, Mr. Pennington requested to speak with counsel. (*Id.*, Page ID # 2955). After conferring, his counsel stated: "[H]e got confused on whether there was still an impact of human trafficking." (*Id.*, Page ID # 2956). The court explained that, although he "did not plead guilty to anything related to human trafficking," the guideline for tampering "references the guideline applicable to the underlying offense, and so that is why it impacts your guideline range." (*Id.*). The court later noted that the "base offense level started significantly higher than […] a garden-variety witness-tampering offense." (*Id.*, Page ID # 2985).

**B. Mr. Pennington's personal history and characteristics played a significant role in the court's downward variance.**

---

[2] This is presumably a typographical error and should reference §2X3.1(a)(1).

The court acknowledged Mr. Pennington is "certainly very distinct in comparison with other defendants" in the overall human trafficking conspiracy. (*Id.*, Page ID # 2985). Based on Mr. Pennington's personal history and characteristics, his limited role in the offense, and because the court found that neither "protection of the public or deterrence really are significant factors in any way in this case," the court found that the advisory guidelines range overstated the offense and did not adequately "take into consideration the 3553(a) factors," so the court applied "around a 45 percent variance" downward. (*Id.*, Page ID ## 2987–2988). The court acknowledged Mr. Pennington's personality disorder, noting in particular "the emotional breakdowns that [Mr. Pennington] had during incarceration" and "that there is evidence that he had a romantic relationship with these women. I mean, that just really can't be denied." (*Id.*, Page ID ## 2984, 2987).

## C. The court imposed a term of supervised release in the middle of the range.

In addition to the custodial sentence, the court imposed a two-year term of supervised release. (*Id.*, Page ID # 2988); (Judgment, R. 534, Page ID ## 2737–2738). No separate explanation for the term of supervised release was provided.

## SUMMARY OF THE ARGUMENT

Mr. Pennington pleaded guilty to—and was convicted of—witness tampering, which has a statutory *maximum* sentence of 20 years. However, his sentence was calculated as if he had been convicted of human trafficking, which has a *minimum* sentence of 15 years. The district court correctly concluded that witness tampering convictions are sentenced using the offense level associated with the "underlying offense" that was obstructed, but incorrectly determined the underlying offense in this case. As a result, the court applied a guideline with a heightened offense level to account for the significant penalty attached to human trafficking convictions. This was plain error and rendered his sentence procedurally unreasonable. Further, Mr. Pennington's sentence was substantively unreasonable, even though the court varied downward, because the starting point of the calculation was wrong, and the sentence was still too long. No formal objection was necessary to preserve this Court's review because Mr. Pennington asked for a lesser sentence and brought the general issue to the court's attention. If this Court finds Mr. Pennington's claims are subject to heightened review standards because his counsel did not object in response to the *Bostic* question, the Court should take the opportunity to overrule that requirement as inconsistent with Rule 51 of the Federal Rules of Criminal Procedure. Finally, the 2-year supervised release sentence is substantively unreasonable because the court's findings under 18 U.S.C. § 3553(a) weighed against this lengthy mid-point sentence.

13

## ARGUMENT

**I.  Mr. Pennington's sentence for witness tampering was improperly based on a heightened guideline applicable to human trafficking convictions.**

### A. Standard of Review.

Criminal defendants are constitutionally and statutorily entitled to fair sentencing procedures that consider the defendant and the crime of conviction holistically to impose a just punishment that is neither excessive nor cruel. U.S. Const. amends. V, VI, and VIII; 18 U.S.C. § 3553(a); *United States v. Zabel*, 35 F.4th 493, 511 (6th Cir. 2022) (noting Sixth Circuit has adopted "narrow proportionality principle"). To be considered harmless, constitutional error must be harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967). Factual findings supporting a sentence are reviewed for clear error and legal conclusions are reviewed *de novo*. *See United States v. Fleischer*, 971 F.3d 559, 567 (6th Cir. 2020).

Under the advisory Guidelines, this Court reviews criminal sentences for procedural and substantive reasonableness. *United States v. Sears*, 32 F.4th 569, 573 (6th Cir. 2022) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). "Substantive reasonableness and procedural reasonableness require 'separate inquir[ies].'" *United States v. Brown*, 856 Fed. App'x 36, 41–42 (6th Cir. 2021). However, determining "what falls in the procedural versus substantive prong" of reasonableness analysis is "not fully settled" within the Sixth Circuit. *United States v. Johnson*, 26 F.4th 726,

734 n.3 (6th Cir. 2022) (citations omitted). In fact, "The border between procedural and substantive reasonableness can be blurry, and the analysis often overlaps." *United States v. Wilson*, No. 20-1984, 2021 WL 3017276, 2021 U.S. App. LEXIS 21136, at *6 n.2 (6th Cir. July 16, 2021) (quoting *United States v. Small*, 988 F.3d 241, 258 (6th Cir. 2021)) (declining to resolve ambiguity).

*i. Procedural reasonableness.*

A sentence is procedurally reasonable "where 'the trial court follows proper procedures and gives adequate consideration to [the 18 U.S.C. § 3553(a)] factors.'" *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (quoting *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020)). A sentence is procedurally unreasonable where the court incorrectly calculates the sentencing guidelines or fails to adequately articulate its reasoning. *See United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017) (quoting *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007)). While "procedural reasonableness assessment looks at whether the district court gave 'adequate consideration' to the § 3553(a) sentencing factors, this 'adequacy' analysis is specifically related to the *process* the district court followed, rather than the *weight* given to any sentencing factor." *United States v. Johnson*, 26 F.4th 726, 734 n.3 (6th Cir. 2022).

Procedural sentencing errors should be remanded for resentencing unless the error is harmless, meaning the appellate court "is convinced that the 'error at

sentencing did not cause the defendant to receive a more severe sentence.'" *United States v. Davis*, 751 F.3d 769, 773 (6th Cir. 2014) (quoting *United States v. Gillis*, 592 F.3d 696, 699 (6th Cir. 2009)). "There can be no harmless error unless the appellate court can determine from the record that the same sentence would be imposed on remand. For the government to carry its burden, it must demonstrate to the Court *with certainty* that the error at sentencing did not cause the defendant to receive a more severe sentence." *Gillis*, 592 F.3d at 699 (emphasis original) (internal quotations omitted).

### ii. *Substantive reasonableness.*

A sentence is substantively reasonable when its length conforms with the goals of § 3553(a) to impose a sentence sufficient to serve the purposes of sentencing, but not greater. *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (citing *Holguin-Hernandez*, 140 S. Ct. at 766). When a sentence is within the range recommended by the guidelines, this Court "presume[s] the sentence was reasonable." *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020) (citing *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc)).

"A claim that a sentence is substantively unreasonable is…a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others…." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). *E.g.*, *United States v. Johnson*, 26 F.4th 726, 736 (6th Cir. 2022) (concluding sentence

substantively unreasonable because court's analysis gave undue weight to some factors and too little weight to another). "[T]he 'point [of substantive unreasonableness] is not that the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness.'" *United States v. Wilson*, No. 20-1984, 2021 WL 3017276, 2021 U.S. App. LEXIS 21136, at *6 n.2 (6th Cir. July 16, 2021) (counseling that defendant's argument about sentence's defect "better stated" as "district court failed to give *proper* consideration to the circumstances of the offense to which Jonathan Wilson pleaded guilty and the nature of his criminal history").

      *iii.  Implications for appellate review related to claim preservation.*

The standard of review for procedural and substantive reasonableness depends on whether and how the issue was preserved:

> A criminal defendant who wishes a court of appeals to consider a claim that a ruling of a trial court was in error must first make his objection known to the trial-court judge. The Federal Rules of Criminal Procedure provide two ways of doing so. They say that

>> "[a] party may preserve a claim of error by informing the court . . . of [1] the action the party wishes the court to take, or [2] the party's objection to the court's action and the grounds for that objection."

> Errors "not brought to the court's attention" in one of these two ways are subject to review only insofar as they are "plain."

17

*Holguin-Hernandez v. United States*, 206 L. Ed. 2d 95, 140 S. Ct. 762, 764 (2020) (citations omitted); Fed. R. Crim. P. 51(b). In *Holguin-Hernandez*, the Supreme Court addressed the "differences among the Courts of Appeals" regarding requirements to preserve sentencing claims for appeal. *Id.* at 765–66 (identifying as an example *United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008) (en banc)). Specifically, the Court disagreed with the requirement to refer to a sentence's "reasonableness" to preserve appellate claims. *Id.* The appropriate standard for claim preservation is provided by the Federal Rules of Criminal Procedure, which were "intended to dispense with the need for formal 'exceptions' to a trial court's rulings" and intentionally do not require an objecting party "to use any particular language or even to wait until the court issues its ruling" such that, "The question is simply whether the claimed error was 'brought to the court's attention.'" *Id.* at 766 (citations omitted). The concurrence announced its understanding that the holding is limited to preservation of substantive reasonableness claims. *Id.* at 767 (Alito, J., concurring).

Following *Holguin-Hernandez*, this Court has stated that "[A]buse-of-discretion review applies to a substantive challenge whether or not a defendant has preserved it, whereas plain-error review applies to an unpreserved procedural challenge." *United States v. Collins*, 860 Fed. App'x 405, 408 (6th Cir. 2021). *See also United States v. Wright*, 841 Fed. App'x 940, 942 (6th Cir. 2021) ("Unlike

objections to the procedural reasonableness of a sentence, the defendant need not object to the substantive reasonableness of a sentence in the district court in order to preserve the issue for appeal. But plain-error review still applies to "any arguments for leniency that the defendant does not present to the trial court.") (internal quotation marks omitted).

An error is plain whenever it "is clear or obvious" and "affects substantial rights" of the defendant. *United States v. Hatcher*, 947 F.3d 383, 389 (6th Cir. 2020) (quoting *United States v. Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996)). It should be corrected by the appellate court if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Hatcher*, 947 F.3d at 389 (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993) (alterations in original). A sentencing based on an incorrect guidelines calculation is plain error that sufficiently effects the defendant's "substantial rights for purposes of obtaining relief under Rule 52(b)." *See Molina-Martinez v. United States*, 578 U.S. 189, 198, 204 (2016).

In the Sixth Circuit, "After announcing its sentence, a district court must 'ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised.' If a defendant does not raise a procedural objection at that time, an appeal on that objection is reviewed only for plain error." *United States v. Wheeler*, 851 Fed. App'x 592, 593–94 (6th Cir. 2021) (quoting *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004)). *See also United*

*States v. Vonner*, 516 F.3d 382 (6th Cir. 2008) (en banc).[3] The purposes of the *Bostic*

question are to help this Court ascertain "whether a party had an opportunity to make

additional objections, ensure the district court has an opportunity to correct errors,

and create a "more reliable record" for appeal. *United States v. Simmons*, 587 F.3d

348, 355–58 (6th Cir. 2009) (holding *Vonner* requires application of plain-error

review to procedural claims where party answers *Bostic* question "in the affirmative,

but at such a high degree of generality that the district court has no opportunity to

correct its purported error and the court of appeals has been deprived of a more

detailed record to review"). *See also id.* at 354 ("*Vonner* emphasized that substantive

and procedural claims made by counsel prior to sentencing are reviewed for

reasonableness, regardless of how counsel subsequently answers

the *Bostic* question").

Other considerations in evaluating a sentence on appeal include waiver,

forfeiture, and invited error. "Waiver is the intentional relinquishment or

abandonment of a known right." *United States v. Montgomery*, 998 F.3d 693, 697

---

[3] Bostic announced a "new procedural rule," *Bostic*, 371 F.3d at 872, which was extended in *Vonner* over multiple dissents. *See United States v. Vonner*, 516 F.3d 382, 395 (6th Cir. 2008) (Daughtry, J., dissenting) ("Because *Rita* and *Gall* do not require a defendant to object to the procedural or substantive reasonableness of his sentence at the time of sentencing, and indeed suggest that it would be improper to raise such an objection with the district court, I find the majority's application of plain error review inappropriate.").

(6th Cir. 2021) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). It is a long-standing principle of law that courts will apply a reasonable presumption against waiver of any constitutional right. *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

On the "other end of the spectrum" is forfeiture. "A party 'forfeits' an argument by negligently failing to adequately raise the argument at the proper time." *United States v. Corrales*, No. 21-6046, 2022 WL 7386925, 2022 U.S. App. LEXIS 28587, at \*6 (6th Cir. Oct. 13, 2022). Appellate courts may consider forfeited claims. Fed. R. Crim. P. 52(a). "Appellate courts categorically refuse to consider a waived claim and will not save a defendant from an intentional choice to abandon it. Appellate courts, by contrast, have discretion to accept a valid claim that a defendant forfeited if the defendant can meet the four elements of the 'plain error' test that applies to forfeited claims." *Corrales*, 2022 U.S. App. LEXIS 28587, at \*6 (citations omitted). It is not always clear whether a claim is on the "borderline" between waiver and forfeiture. For example, the Sixth Circuit has held that the decision to only raise an argument under § 3553(a) could constitute waiver. *Id.* (citing *United States v. Sherrill*, 972 F.3d 752, 769 & n.7 (6th Cir. 2020)). However, this Court has also suggested that, in the sentencing context, waiver requires a "plain, explicit" concession that a guideline does or does not apply such that it is forfeiture for counsel

to indicate that a PSR is "accurate as tendered" but not to agree to a report's decision on a particular guideline calculation. *Id.*

In between forfeiture and waiver lies invited error, which occurs when the litigant "contributes in some way to the district court's error without intentionally relinquishing his rights." *Id.* In the case of an invited error, "the interests of justice will typically favor reviewing an argument where the government and the defendant are equally at fault at the defendant claims a violation of his constitutional rights." *United States v. Montgomery*, 998 F.3d 693, 699 (6th Cir. 2021). *See also Corrales*, 2022 U.S. App. LEXIS 28587, at *1–2 ("[T]o preserve a request for a minor-role reduction, a defendant must make a request for a minor-role reduction. Corrales did not. He instead told the district court that he was *not* requesting one. And even if he merely forfeited (as opposed to waived) this claim, the district court did not commit plain error by failing to apply the minor-role reduction on its own initiative.").

**B. The applicable standard of review for the issues in this appeal should be abuse-of-discretion, though Mr. Pennington is also entitled to relief for plain error.**

Mr. Pennington (1) made factual objections rooted in the concern he would be punished for the human trafficking conspiracy despite the conspiracy count's dismissal, and he was reassured that he was not being held accountable for the conspiracy in the probation office's response to objections; (2) expressed confusion to the district court regarding being held responsible for human trafficking when he

pleaded guilty to witness tampering, and he was again reassured by the court when he asked for clarification; and (3) advocated for a lesser sentence than his advisory guidelines range calculated by the court. *See* (Sentencing Transcript, R. 571, Page ID ## 2956, 2982).

Therefore, even though Mr. Pennington did not object to the application of the level-34 human trafficking guideline, he brought to the court's attention a general dispute about the role of the human trafficking guideline in his sentencing calculation, and he informed the court of his preferred action (a lesser sentence). *See United States v. Lopez*, 813 Fed. App'x 200, 201–02 (6th Cir. 2020) ("Because he argued for a below-guidelines sentence, we review the substantive reasonableness of the sentence for abuse of discretion."). For example, in *United States v. Prater*, the defendant submitted a 2-paragraph objection to the PSR in which he objected to his Armed Career Criminal designation, then listed four predicate offenses and a statement that he was relying on "arguments previously raised on this issue." 766 F.3d 501, 506–07 (6th Cir. 2014). When determining whether this was sufficient to preserve the issue, the Sixth Circuit noted that Prater's prior pleadings did not question whether the prior offenses were qualifying predicate offenses, but the district court "clearly understood the basis of the objection" which gave the court "an opportunity to remedy the claimed error," which was sufficient to preserve the issue. *Id. But see United States v. Corrales*, No. 21-6046, 2022 WL 7386925, 2022

23

U.S. App. LEXIS 28587, at *13 (6th Cir. Oct. 13, 2022) (concluding defendant cannot preserve claim by raising different, albeit related, one).

As a result, the record in this case should be construed as fairly preserving Mr. Pennington's challenge to the propriety and reasonableness of his sentence, which means it should be reviewed under an abuse-of-discretion standard, not plain error. *Holguin-Hernandez v. United States*, 206 L. Ed. 2d 95, 140 S. Ct. 762, 764 (2020). *See also United States v. Vonner*, 516 F.3d 382, 388 (6th Cir. 2008) (noting that Rule 32(i)(3)(B) says, "the court must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing").

The "border between factors properly considered 'substantive' and those properly considered 'procedural' is blurry if not porous." *United States v. Ming Liou*, 491 F.3d 334, 337 (6th Cir. 2007). That blurry line should counsel in favor of this Court reviewing a district court's application of a sentencing guideline under a *de novo* rather than plain error standard. *See Vonner*, 516 F.3d at 397 (Daughtry, J., dissenting) ("While we have subdivided our analysis of the reasonableness of a district court's sentence along procedural and substantive lines, our jurisprudence as well as the Supreme Court's most recent sentencing pronouncements indicate that these two inquiries are simply different aspects of the overall reasonableness review

24

required by *Booker*."). *But see Holguin-Hernandez*, 140 S. Ct. at 767–68 (Alito, J., concurring) (stating that "failing to object at all to a procedural error (*e.g.*, a district court's miscalculation of the Guidelines range) will subject a procedural challenge to plain-error review") (citing *Molina-Martinez v. United States*, 136 S. Ct. 1338, 578 U.S. 189 (2016)).

With respect to Mr. Pennington's procedural reasonableness claim that the district court applied the wrong base offense level, even if this Court finds that the "plain error" standard applies, he "is entitled to resentencing under a correctly calculated Guidelines range because the error was clear, it affected his substantial rights, and it affected the fairness of the proceedings below." *United States v. Nicolescu*, 17 F.4th 706, 731 n.9 (6th Cir. 2021) (finding error clear even though defendant failed to object to sentencing enhancement) (citing *Rosales-Mireles v. United States*, 201 L. Ed. 2d 376, 138 S. Ct. 1897, 1907–08 (2018) and *Molina-Martinez*, 578 U.S. at 194). "'[B]ecause the Guidelines range is the starting point for the district court's analysis[,]' and absent some indication that the district court would have imposed the same sentence regardless of the error, it is for the district court to 'decide whether, starting from the correct Guidelines range, a downward variance remains appropriate.'" *United States v. Nicolescu*, 17 F.4th 706, 730–31 (6th Cir. 2021) (quoting *United States v. Montgomery*, 998 F.3d 693, 700 (6th Cir. 2021)) (remanding for resentencing where below-guidelines sentence predicated on

incorrect starting point). *Cf. United States v. Milliron*, 984 F.3d 1188, 1196 (6th Cir. 2021) ("We need not decide whether Milliron preserved these issues by objecting at sentencing so as to avoid plain-error review because, even under the less-deferential abuse-of-discretion standard of review, it is clear that the sentencing enhancements apply.").

If this Court finds that plain error applies because Mr. Pennington's counsel did not respond in the affirmative to the *Bostic* inquiry, Mr. Pennington respectfully requests that the Court overrule this procedural hurdle as inconsistent with Rule 51 of the Federal Rules of Criminal Procedure and the logic of *Holguin-Hernandez*. *Cf. United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) ("Vonner did not argue either in his original appellate briefs or in his supplemental en banc briefs that *Bostic* should be overruled.").

With respect to Mr. Pennington's substantive reasonableness claim that his sentence is too long, abuse-of-discretion review applies. In *Holguin-Hernandez*, the defendant properly preserved a claim that his 12-month sentence was unreasonably long by advocating for a shorter sentence and "thereby arguing, in effect, that this shorter sentence would have proved 'sufficient,' while a sentence of 12 months or longer would be 'greater than necessary' to 'comply with' the statutory purposes of punishment." 140 S. Ct. at 767. The concurrence recommended that, "In determining whether arguments have been preserved, courts should make a case-specific

assessment of how the error was 'brought to the court's attention.'" *Id.* at 767–68 (Alito, J., concurring) (citing *Vonner*, 516 F.3d at 392).

### C. The base offense level was miscalculated because it incorrectly included that the offense of conviction was for human trafficking.

Mr. Pennington's guideline range for his witness tampering conviction was substantially lengthened because the district court applied a provision that reflects heightened penalties associated with convictions for human trafficking. By applying the incorrect guideline, his range was not properly calculated; even though the court varied downward, Mr. Pennington still received a sentence greater than necessary.

The court's guideline analysis was wrong for several reasons.

*First*, the plea agreement did not specify the underlying offense for Mr. Pennington's witness tampering conviction, and the factual basis in the agreement did not establish that Mr. Pennington agreed that he or Mr. Towery committed the offense of human trafficking via "force, threats of force, fraud, or coercion." *See* 18 U.S.C. § 1591(a), (e)(2). Nor did the factual background contain all elements of a human trafficking offense. *See id.* Rather, the factual basis for the plea referenced a "conspiracy to engage [in] human trafficking, in violation of 18 U.S.C. § 1594(c)"— but this reference established only that Mr. Pennington agreed he knew his neighbor (1) "prostitute[d] young women" and (2) was arrested and charged with conspiracy to engage in human trafficking. (Plea Agreement, R. 491, Page ID ## 2573–2574).

Mr. Pennington also agreed that he was "subsequently arrested for the same offense…." (*Id.*) Further facts were not included, and simply agreeing that someone has been charged with an offense is not equivalent to agreeing that someone has committed an offense.

One of the Guidelines' application principles, §1B1.2(c), does not affect this analysis. That provision explains that a plea agreement "containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant has been convicted of additional count(s) charging those offense(s)." *See United States v. Nedelcu*, 46 F.4th 446, 450, 453 (6th Cir. 2022) (explaining that defendant's argument that particular guideline was inapplicable because it contained express directive for conviction under USSG §1B1.3 n.7 did not apply because defendant stipulated to facts of referenced conviction and §1B1.2(c) permitted court to treat those facts as conviction for guidelines computation). Here, there was no stipulation establishing the commission of additional offenses.

*Second*, it does not follow that the level-34 guideline applies because Mr. Pennington was charged with a conspiracy offense, not the substantive human trafficking offense.[4] Conspiracy to commit human trafficking, 18 U.S.C. § 1594(c),

---

[4] Mr. Pennington agrees that "When sentencing a defendant under § 2J1.2, the district court is 'required to calculate the base offense level for the offense of conviction under both the "Obstruction of Justice" guideline, U.S.S.G. §2J1.2, and

does not correspond to specific guideline provision, so the offense level calculation begins with USSG §2X1.1, which states that the relevant offense level in a conspiracy case is the same as "the guideline for the substantive offense."[5] The relevant guideline for human trafficking of an adult is USSG §2G1.1. That guideline defines two base offense levels: "34, if the offense of conviction is 18 U.S.C. § 1591(b)(1) […] or 14, otherwise." USSG §2G1.1(a).

Mr. Pennington was not convicted of 18 U.S.C. § 1591(b)(1); therefore, the reference to §2G1.1 means the court should have applied level 14 because §2G1.1(a)(1) expressly directs that it only applies when the "offense of conviction"

---

the "Accessory After the Fact" guideline, §2X3.1, and apply the greater of the two sentences.'" *United States v. Kimble*, 305 F.3d 480, 485 (6th Cir. 2002) (citation omitted). Notably, the "Accessory After the Fact" provision provides that the relevant offense level is "6 levels lower than the offense level for the underlying offense." USSG §2X3.1(a)(1).

The term "underlying offense" means "the offense as to which the defendant is convicted of being an accessory." USSG §2X3.1 app. note 1. The guideline for human trafficking offenses, §2G1.1, says to apply a level-34 base offense level "if the offense of conviction is 18 U.S.C. § 1591(b)(1)" or 14 "otherwise." *See* USSG §2G1.1(a)(1). *See also* USSG §2X1.1 (apply base offense for "substantive offense" for conspiracies).

Therefore, the issue in this case is whether, when the court was required to determine the "underlying offense," it was appropriate to select level 34 [minus 6] or level 14 [minus 6]. Mr. Pennington argues that the correct endpoint of the analysis is to apply level 14, because that is greater than 6 levels lower than level 14 for non-§ 1591 human trafficking cases. USSG §2J1.2(a), (c)(1).

[5] As discussed in a separate section, below, there is a circuit split regarding application of §2G1.1 when a defendant has been charged with human trafficking conspiracy.

is § 1591(b)(1). It is relevant that §2G1.1(a)(1) uses the term "offense of conviction" because "A particular guideline (in the base offense level or in a specific offense characteristic) may expressly direct that a particular factor be applied only if the defendant was convicted of a particular statute." USSG §1B1.3 n.7. This directive also applies "where the defendant was *convicted* of conspiracy…in respect to that particular statute." *Id.* (emphasis added). By contrast, when there is not an express directive, there need not be a conviction, as when the guidelines use a statutory reference "to describe a particular set of circumstances" such as "if the offense involved conduct described in [a particular statute.]" *Id.*

The "offense of conviction" language in USSG §2G1.1(a)(1) is an "express direction to apply" level 34 only when a defendant has been convicted of human trafficking. Mr. Pennington was not *convicted* of that offense. Because there is no relevant conviction, the plain language of application USSG §1B1.3 n.7 precludes the application of offense level 34 in this case. *See United States v. Hernandez-Fierros*, 453 F.3d 309, 313 (6th Cir. 2006) (recognizing "Application Notes controlling weight").

The appropriate base offense level for conviction of a witness tampering offense involving the obstruction of a prosecution for a human trafficking conspiracy does not appear to have been addressed by this Court or by any of the courts of appeals. Undersigned counsel was only able to identify one case that referenced both

the obstruction of justice guideline (§2J1.2) and the human trafficking of an adult guideline (§2G1.1), or both the "accessory after the fact" guideline (§2X3.1) and §2G1.1. That case was a proceeding brought under 28 U.S.C. § 2255. *See Thomas v. United States*, No. 3:14-cr-00214-MO, 2018 WL 1778593, 2018 U.S. Dist. LEXIS 62654 (D. Or. Apr. 12, 2018), cert. app. denied *United States v. Thomas*, 2018 U.S. App. LEXIS 27533 (9th Cir. Sept. 26, 2018).

In *Thomas*, the defendant pleaded guilty to witness tampering after having been indicted on charges of "sex trafficking by force." *Id.* at *5. He was sentenced using the level-34 base offense level because the court applied a cross-reference from §2J1.2(c) to §2X1.3, and then he moved to correct his sentence pursuant to § 2255, arguing that his base offense level should have been 14 because he was not convicted of sex trafficking. *Id.* at *1, 4. The district court reasoned that the offense level for obstruction cases "is driven by the offense level of the crime whose prosecution was obstructed," and that it does not matter that the defendant was not convicted of the offense because "the point of the cross reference is to punish more severely…obstruction of[] prosecutions with respect to more serious crimes." *Id.* at *4–5. The court in *Thomas* cited a Ninth Circuit case and *United States v. Greer*, 872 F.3d 790 (6th Cir. 2017), for the reasoning that obstructing more serious crimes

should lead to more serious punishments. *Id.* at \*5.[6] In *Thomas*, the defendant was charged with "obstructing the prosecution of sex trafficking by force," *id.*, so the court did not address whether the application of the level-34 base offense would have been appropriate in a human trafficking *conspiracy* prosecution.

*Third*, calculations involving cases of "accessory after the fact" are based on "all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant." USSG §1B1.3 n.9; *see also* USSG §2X3.1 n.1 ("Apply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant) (citing Application Note 9 of the Commentary to §1B1.3 (Relevant Conduct)."). The scope of "relevant conduct" applicable under the sentencing guidelines is "significantly narrower than the conduct embraced by the law of conspiracy," and is limited to "the scope of the criminal activity that the

---

[6] In *Greer*, when the cross-reference from §2J1.2 to §2X3.1 was applied, the court then had to determine the base offense level for a civil rights violation by identifying the underlying offense; the underlying offense was aggravated rape (§2A3.1); because the base offense for obstruction cases is 6 levels lower, the resulting base offense level was 24. 872 F.3d at 793. The guideline for aggravated rape establishes a base offense level as 38 "if the defendant was *convicted* under 18 U.S.C. § 2241(c)" or 30 "*otherwise*." USSG §2A3.1(a) (emphasis added). By applying a level 30 and subtracting 6 levels, the trial court used the "otherwise" prong, not the "conviction" prong. This Court found "no merit" to the defendant's claim that the sentence was miscalculated. *Greer*, 872 F.3d at 792.

particular defendant agreed to jointly undertake." *United States v. Bailey*, 973 F.3d 548, 574–75 (6th Cir. 2020). The extent of activity that the defendant "agreed to jointly undertake" is based on the following considerations: "(1) the existence of a single scene; (2) similarities in modus operandi; (3) coordination of activities among schemers; (4) pooling of resources or profits; (5) knowledge of the scope of the scheme; and (6) length and degree of the defendant's participation of the scheme." *United States v. Donadeo*, 910 F.3d 886, 895 (6th Cir. 2018) (quoting and adopting factors listed in *United States v. Salem*, 657 F.3d 560, 565 (7th Cir. 2011)).

Mr. Pennington cannot be held accountable for the full human trafficking conspiracy because it was beyond the scope of activity he jointly agreed to undertake, and he did not have actual knowledge of the full extent of the scheme. Mr. Pennington has consistently maintained his ignorance of the human trafficking organization and maintained his limited involvement in the overall scheme. *See* (PSR, R. 539, Page ID # 2783). The plea agreement and PSR both state that Mr. Pennington knew his neighbor was arrested and charged with conspiracy to engage in human trafficking, but there is no information in the report demonstrating Mr. Pennington knew about any fraud, force, or coercion used to effectuate the human trafficking that would be necessary to hold him accountable under 18 U.S.C. § 1591(b)(1). (*Id.* at Page ID # 2771 ¶ 61). The court acknowledged Mr. Pennington's limited role in the conspiracy. (Sentencing Transcript, R. 571, Page ID # 2985) ("I

33

also agree completely with the United States that you are certainly very distinct in comparison with other defendants in this case."). Therefore, the relevant offense reference in §2G1.1(a) is 14 because Mr. Pennington cannot be held accountable under 18 U.S.C. § 1591(b)(1) based on relevant conduct under the facts of the plea agreement.

### D. The elevated offense level 34 in §2G1.1(a)(1) was specially promulgated for convictions under § 1591(b)(1) to effectuate a mandatory minimum sentence.

The textual conclusion that the level-34 base offense provision in §2G1.1 does not apply in this case comports with the Sentencing Commission's purpose in increasing the offense level for 18 U.S.C. § 1591(b)(1) to 34. Namely, the increase was in direct response to the Adam Walsh Act, which added a "new mandatory minimum" term of imprisonment of 15 years under 18 U.S.C. § 1591(b)(1). *See United States v. Lin*, 841 F.3d 823, 827 (9th Cir. 2016) ("The Commission therefore likely did not want the higher base offense level to apply when the defendant was not subject to § 1591(b)(1)'s fifteen-year mandatory minimum.").

All other human trafficking offenses are governed by offense level 14, subject to relevant special offense characteristics. One special characteristic within that guideline explains: "If (A) subsection (a)(2) applies; and (B) the offense involved fraud or coercion, increase by 4 levels." Given that § 1591(b)(1) is an enhanced penalty provision that applies if the human trafficking offense "was effected by

means of force, fraud, coercion described in subsection (e)(2), or any combination of such means[,]" the special characteristic in USSG §2G1.1(b)(1) would be superfluous if imposed on defendants who were not convicted of § 1591(b)(1).

> [T]he amendment limits application of the specific offense characteristic at § 2G1.1(b)(1) that applies if the offense involved fraud or coercion only to those offenses receiving a base offense level of 14. Offenses under 18 U.S.C. § 1591(b)(1) necessarily involved fraud and coercion and, therefore, such conduct is built into the heightened base offense level of 34. This limitation thus avoids unwarranted double counting.

U.S. Sentencing Guidelines Manual, Vol. 3, p. 1062 (2021 ed.), Amendment 701.

Mr. Pennington was not convicted of 18 U.S.C. § 1591(b)(1) and no information in the plea agreement or the presentence report to indicate his knowledge of the fraud, force, or coercion necessary for the heightened level 34 to apply to the underlying human trafficking offense. Applying the elevated offense level would contradict a plain reading of the guidelines and the sentencing commission's policy in Amendment 701, which added the higher offense level for the sole purpose of reflecting the mandatory minimum sentence in 18 U.S.C. § 1591(b)(1) for human trafficking committed through fraud, force, or coercion. The plain language analysis Mr. Pennington has raised comports with the amendment that effectuated the higher offense level.

> **E. Because the offense underlying Mr. Pennington's witness tampering conviction is conspiracy to commit human trafficking, the base offense level is 14.**

The pending charge against Mr. Pennington when he committed witness tampering was for 18 U.S.C. § 1594(c), conspiracy to commit human trafficking. Because the "offense of conviction" for this offense would not be 18 U.S.C. § 1591(b)(1), applying level 34 pursuant to §2G1.1(a)(1) is facially incorrect. Which guideline to apply to a human trafficking conspiracy conviction has created a circuit split. *See United States v. Lin*, 841 F.3d 823 (9th Cir. 2016) (holding that conspiracy to commit sex trafficking under § 1594(c) does not carry a base offense level of 34 because it is not an "offense of conviction" under § 1591(b)(1)). The Ninth Circuit was the first appellate court to specifically address this issue.

> Here, a simple matching exercise *can* be done to determine if the offense of conviction is 18 U.S.C. § 1591(b)(1) — simply by looking at the judgment. This is not a situation where we must translate from state statutes to federal statutes, or from plain English names of crimes to federal statutes. We are translating from federal statutes to federal statutes. It seems tortured to say that, when we know what *federal statutes* the defendant was convicted of, and we are asked to determine if the defendant's offense of conviction was a specific *federal statute*, we should break those statutes down into their offense conduct and then compare that conduct, as opposed to simply comparing the federal statutes that we have on both sides of the equation. […]

> To determine if 18 U.S.C. § 1591(b)(1) is the offense of conviction, courts should simply ask if the defendant was convicted of an offense subject to the punishment provided in 18 U.S.C. § 1591(b)(1) — that is, was the defendant subject to the statute's fifteen-year mandatory minimum sentence. This solution is not only simple, and as close to a literal reading of U.S.S.G. § 2G1.1(a)(1) as possible without rendering the guideline meaningless, it is also most likely what the Sentencing Commission intended.

*Lin*, 841 F.3d at 826–27; *see also*, *e.g.*, *Williams v. United States*, No. 19-CV-1375-JPS, 2022 2916349, 2022 WL 2916349, 2022 U.S. Dist. LEXIS 131235, at *17 (E.D. Wis. July 25, 2022) (noting in § 2255 case, "[A]s to Count One of the plea agreement (i.e., obstruction in violation of 18 U.S.C. § 1591(d)), a strict reading of the relevant statute and U.S.S.G. suggests that the base offense level is 14, as there is no reference in the plea agreement to 18 U.S.C. § 1591(b)(1), which would trigger a base offense level of 34 under 2G1.1(a)(1).");[7] *United States v. Jackson*, No. 2:16-cr-00054-DCN, 2018 WL 1316933, 2018 U.S. Dist. LEXIS 41571, at *2 (D.S.C. Mar. 14, 2018) ("The base offense level of 34 applies only to defendants who were convicted of the penalty subsection § 1591(b)(1), which none of these defendants pleaded guilty to. Therefore, the court finds that the appropriate base offense level under the plain language of § 2G1.1(a) is 14."); *United States v. Young*, No. 3:14-cr-05242-RJB, 2017 U.S. Dist. LEXIS 31461, at *4–5 (W.D. Wa. Mar. 6, 2017) (allowing withdrawal of guilty plea because *Lin* was decided after agreement entered and "plea may have been made under the incorrect assumption" that defendant subject to base

---

[7] In supplemental briefing, the government conceded that the base offense level was incorrectly calculated and should have been 14, not 34. *See Williams v. United States*, No. 2:19-cv-01375, R. 41 (E.D. Wis. Aug. 9, 2022). The court has since denied Mr. Williams's § 2255 petition after finding he was not prejudiced by his counsel's ineffectiveness under the particular facts, and Mr. Williams has filed a notice of appeal. *Id.*, R. 49 (Notice of Docketing).

offense level of 34, rather than 14). *But see United States v. Sims*, 957 F.3d 362, 363–64 (3d Cir. 2020) (rejecting reasoning in *Lin*); *United States v. Carter*, 960 F.3d 1007, 1014 (8th Cir. 2020) (same); *United States v. Vanier*, No. S1 18-CR-873 (VSB), 2021 WL 5989773, 2021 U.S. Dist. LEXIS 241461, at *34–36, *36 n.11 (S.D.N.Y. Dec. 17, 2021) (applying level 34 to offense of conviction for 18 U.S.C. § 1594(c) the superseding information specifically alleged that defendant "participated in sex trafficking 'knowing and in reckless disregard of the fact that […] means of force, threats of force, fraud, coercion" as defined in 18 U.S.C. § 1591(e)(2) was used to the persons to engage in commercial sex acts); *see also United States v. Valdez*, No. 19-12522, __ Fed. App'x __, 2021 WL 3478402, 2021 U.S. App. LEXIS 23498, at *17 n.4 (11th Cir. Aug. 9, 2021) (distinguishing *Lin* but declining to weigh in on circuit split).

In the cases that disagree with the reasoning by the Ninth Circuit, the defendant expressly pleaded guilty to *conspiracy* to commit human trafficking by force, fraud, or coercion, while acknowledging that the defendant in *Lin* did not specifically mention § 1591(b)(1). *See Sims*, 957 F.3d at 362–64; *Carter*, 960 F.3d at 1014 n.3; *Valdez*, 2021 U.S. App. LEXIS 23498, at *13–14; *United States v. Caldwell*, Crim. No. 2:17cr002, Civ. No. 2:18cr198, 2021 WL 5579760, 2021 U.S. Dist. LEXIS 229663, at *16–20 (E.D. Va. Nov. 30, 2021) (plea agreement specified

defendant plead guilty to "Conspiracy to Engage in Sex Trafficking by Fraud, Force, and Coercion" in violation of 18 U.S.C. § 1594(c), 1591(a)(1), and 1591(b)(1)).

Mr. Pennington pleaded guilty to witness tampering. If the guideline cross-reference is based on Mr. Towery's human trafficking offense, that offense was a conspiracy, and offense level 14 should apply because Mr. Pennington's offense of *conviction* is not a human trafficking offense. His case is stronger than the defense position in *Lin*, therefore, because Mr. Pennington was not convicted of 18 U.S.C. § 1594(c), either substantively or as an accessory after the fact.

If applying a level 34 base level is ambiguous, the rule of lenity requires resolution of that ambiguity in favor of the defendant; under the facts here, the high base offense level under §2G1.1(a)(1) should not apply to Mr. Pennington. *See United States v. Welch*, 689 F.3d 529, 534 (6th Cir. 2012) (applying rule of lenity to sentencing guidelines).

### F. Mr. Pennington's sentence should be vacated and remanded for resentencing based on a corrected calculation of the guidelines.

Mr. Pennington's base offense level for witness tampering obstructing the prosecution of conspiracy to commit human trafficking under 18 U.S.C. § 1594(c) should have been 14. After receiving two-levels off for acceptance of responsibility

under USSG §3E1.1,[8] Mr. Pennington would have an offense of 12, a criminal history category of I, and a resulting sentencing range of 10–16 months. This is in stark contrast to the advisory calculation at sentencing: offense level of 25 (base offense level of 28 with a 3-point reduction), criminal history category I, and a resulting guidelines range of 57–71 months imprisonment. (Sentencing Transcript, R. 571, Page ID # 2955).

By relying on level 34 in its calculations, the court committed plain error and substantially interfered with Mr. Pennington's right to liberty by imposing a sentencing starting point significantly higher than what is applicable under a correct calculation. This case should be remanded for resentencing because the sentencing court committed plain error by relying on an incorrectly calculated advisory guidelines range. *See* 18 U.S.C. § 3742(a)(2) (permitting appeal from otherwise final sentence if "imposed as the result of an incorrect application of the sentencing guidelines"). Whenever a sentence is "imposed as a result of an incorrect application of the sentencing guidelines," the appellate court "shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate[.]" 18 U.S.C. § 3742(f)(1); *United States v. Story*, 503 F.3d 436, 440–41 (6th Cir. 2007)

---

[8] The sentencing court granted a three-level departure under USSG §3E1.1 because the offense level was 16 or higher.

(remanding for resentencing because court committed "plain error" by miscalculating bottom range of guidelines at 346 instead of 324, because although court applied downward departure based on § 3553(a) factors, sentence began from wrong "starting point" and it was "certainly possible that the overall sentence was incorrect as well"); *United States v. Jessie*, 656 Fed. App'x 97, 104 (6th Cir. 2016) (same); *United States v. Mosley*, 550 Fed. App'x 277, 283 (6th Cir. 2014) (same).

An incorrect calculation of the advisory guidelines range is plain error that necessarily affects the defendant's substantial right of liberty because the sentencing court relies on the wrong starting point in affixing its sentence. *See United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007); *United States v. Inman*, 666 F.3d 1001, 1004 (6th Cir. 2012). Mr. Pennington's guidelines range was incorrectly calculated, and, though the court applied a downward variance, the resulting sentence was still higher than the properly calculated guidelines range.

## II.    Mr. Pennington's term of supervised release is unreasonably long.

Mr. Pennington pleaded guilty to a Class C felony, so he could have been sentenced to up to three years of supervised release following his custodial sentence. 18 U.S.C. § 3583(b)(2). The sentencing guidelines recommend a term of at "least one year but not more than three years." USSG §5D1.2(a)(2). Despite varying downward 45% for his custodial sentence, the court chose the midpoint and sentenced Mr. Pennington to two years of supervised release, which was

substantively unreasonable. Although Mr. Pennington did not object to the length of supervised release, for the reasons described *supra*, his claim that his term of supervised release is substantively unreasonable should nonetheless be reviewed for abuse-of-discretion because his counsel advocated for a lower time-served sentence of 18 months. *See* (Sentencing Memorandum, R. 523, Page ID # 2683) (requesting Mr. Pennington be sentenced to time served, with enrollment in mental health treatment program); *cf.* (Sentencing Transcript, R. 571, Page ID # 2970) (defense advocating for "time served, release him on supervised release with all the obvious conditions"); *see also United States v. Zabel*, 35 F.4th 493, 509–10 (6th Cir. 2022) (rejecting argument that term of supervised release substantively unreasonable after applying "highly deferential standard of review").

Supervised release is a rehabilitative measure that focuses on improving "the odds of a successful transition from the prison to liberty." *Johnson v. United States*, 529 U.S. 694, 708–09 (2000). "Supervised release is essentially rehabilitative and is not intended for punishment." *United States v. Lewis*, 498 F.3d 393, 397 (6th Cir. 2007) (citing *Johnson*, 529 U.S. at 709). "Supervised release is 'a form of postconfinement monitoring' that permits a defendant a kind of conditional liberty by allowing him to serve part of his sentence outside of prison." *Mont v. United States*, 204 L. Ed. 2d 94, 139 S. Ct. 1826, 1833 (2019) (citing *Johnson*, 529 U.S. at 697). Only two of § 3553(a)'s subsections are excluded from the list of factors courts

may consider when imposing supervised release: whether there is a need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "the kinds of sentences available." *See* 18 U.S.C. § 3583(c).

In imposing Mr. Pennington's custodial sentence, the district court acknowledged his "good relationships" with his brother, and his "step children and grandchildren[,]" his "very long and productive work history[,]" his mental health issues and history of "emotional breakdowns" during incarceration, his lack of criminal history, and his age. (Sentencing Transcript, R. 571, Page ID ## 2983–2984). Notably, the court found that neither "deterrence or protection of the public […] weigh significantly in this case, given [his] age and obvious remorse." (*Id.*, Page ID # 2986). The court reasoned that a custodial sentence beyond time served was necessary based on its determination of the "nature and circumstances of the offense and its seriousness" which were described as "really egregious." (*Id.*, Page ID ## 2984–2985). The court did not engage in a similar analysis in imposing two years of supervised release.

In its reasoning for the length of imprisonment, the district court focused on the gravity of the offense, while acknowledging that Mr. Pennington's age and other personal characteristics, including his close relationships with his family, weighed against a lengthy sentence. (Sentencing Transcript, R. 571, Page ID ## 2983–2984).

Yet these factors weigh *against* a period of supervised release. The court appears to have focused on the nature of the offense itself, not Mr. Pennington or his ability to re-enter society. (*Id.*, Page ID ## 2983–2988). Because the "seriousness of the offense" and "respect for the law" factors were the only § 3553(a) factors against Mr. Pennington (and they excluded for purposes of determining supervised release), the court's imposition of a two-year term of supervised release is substantively unreasonable. Indeed, the severity of the offense itself was the only factor that favored punishment because the § 3553(a) factors otherwise favored leniency to Mr. Pennington (and, indeed, prompted a 45% downward variance). *Cf. United States v. Bailey*, 264 Fed. App'x 480, 484–85 (6th Cir. 2008) (explaining sentence may be substantively unreasonable when selected arbitrarily, based on impermissible factors, or unreasonable weight is given to particular factor).

By arbitrarily imposing a two-year term of supervised release, the district court either gave the severity of the offense too much weight—which is not relevant to supervised release because it is concerned with rehabilitation and re-entry into society rather than with punishment—or it imposed the term arbitrarily based only on the probation office's recommendation. In either case, the term of supervised release is substantively unreasonable, untethered to the facts of this case, and the term is excessive as to Mr. Pennington.

## **CONCLUSION**

Mr. Pennington's sentence was imposed as a result of an incorrect application of the sentencing guidelines which caused his overall sentence to be too long. In addition, the court unreasonably sentenced Mr. Pennington to two years' supervised release. Therefore, for these and the foregoing reasons, Mr. Pennington respectfully requests this Honorable Court of Appeals vacate the judgment from the district court and remand the case for resentencing with instructions to calculate Mr. Pennington's guidelines starting with a base offense level of 14 rather than 34, sentence him to time served, and order no more than the minimum one-year of supervised release. 18 U.S.C. § 3742(f)(1). If this Court finds the claims are subject to heightened review standards because his counsel did not object in response to the *Bostic* question, the Court should take the opportunity to overrule that requirement.

Respectfully submitted,

RITCHIE, DAVIES, JOHNSON, & STOVALL, P.C.

/s/Stephen Ross Johnson
STEPHEN ROSS JOHNSON (TN BPR #022140)
CATALINA L. C. GOODWIN (TN BPR #038660)
606 W. Main Street, Suite 300
Knoxville, TN 37902
(865) 637-0661
johnson@rdjs.law
goodwin@rdjs.law
*Counsel for David Pennington*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. Rule 32(a)(7)(C), I hereby certify that this brief complies with the type-volume limitation. I have checked the number of words in the applicable portions of this brief using Microsoft Word, and the report indicates that the countable portions of this brief under Rule 32(a)(7) contain 10,638 words.

/s/Stephen Ross Johnson
STEPHEN ROSS JOHNSON

## **CERTIFICATE OF SERVICE**

Pursuant to Fed. R. App. P. Rule 25(d), I hereby certify that a true and exact copy of the foregoing was forwarded, via the Court's electronic filing ("ECF") system, this 31st day of October, 2022, to:

Charles P. Wisdom, Jr.
Office of the U.S. Attorney
260 W. Vine Street, Suite 300
Lexington, KY 40507-1612
(859) 685-4903
charles.wisdom@usdoj.gov

Jenna E. Reed
Office of the U.S. Attorney
601 Meyers Baker Road, Suite 200
London, KY 40741-3035
(606) 330-4829
jenna.reed@usdoj.gov

*Counsel for the Government*

/s/Stephen Ross Johnson
STEPHEN ROSS JOHNSON

# ADDENDUM

| Entry No. | Description of Entry | Date | Page ID # Range |
|---|---|---|---|
| 11 | Indictment | 10/24/2019 | 45–50 |
| 51 | First Superseding Indictment | 11/21/2019 | 207–213 |
| 97 | Order Setting Conditions of Release | 12/05/2019 | 334–336 |
| 117 | Second Superseding Indictment | 12/19/2019 | 385–391 |
| 139 | Third Superseding Indictment | 01/23/2020 | 440–447 |
| 277 | Findings in Support of Revocation and Detention | 08/31/2020 | 983–986 |
| 372 | Expert Witness Disclosure and Notice of Diminished Capacity Defense | 02/15/2021 | 1658–1659 |
| 438 | Sealed Memorandum Opinion and Order on the United States' Motion for Psychiatric and Psychological Examination | 06/11/2021 | 1999–2014 |
| 447 | Order Unsealing Memorandum Opinion [R. 438] | 07/07/2022 | 2039 |
| 473 | Fourth Superseding Indictment | 09/22/2021 | 2525–2530 |
| 491 | Plea Agreement | 10/05/2021 | 2573–2576 |
| 523 | Defense Sentencing Memorandum | 02/02/2022 | 2674–2683 |
| 534 | Judgment | 02/28/2022 | 2736–2742 |
| 537 | Notice of Appeal | 03/07/2022 | 2749 |
| 538 | Sealed Presentence Investigation Report 32(c) Information | 03/07/2022 | 2750–2758 |
| 539 | Presentence Investigation Report | 03/07/2022 | 2759–2788 |
| 571 | Sentencing Hearing Transcript | 06/23/2022 | 2946–2994 |
| 579 | Rearraignment Transcript | 10/05/2021 | 3021–3068 |